## UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF FLORIDA TALLAHASSEE DIVISION

CHARLES ANTHONY CANNON,

     Petitioner,

v.                          Case No. 4:21-cv-334-MW-MJF

RICKY D. DIXON,

     Respondent.

_____/

## REPORT AND RECOMMENDATION

Petitioner Charles Anthony Cannon, proceeding *pro se*, has filed a petition for writ of habeas corpus under 28 U.S.C. § 2254. Doc. 1. Respondent ("the State") answered, providing relevant portions of the state court record. Doc. 10. Cannon replied. Doc. 17. The undersigned concludes that no evidentiary hearing is required for the disposition of this matter, and that Cannon is not entitled to habeas relief.

### I. BACKGROUND FACTS AND PROCEDURAL HISTORY[1]

In early 2014, Cannon repeatedly sexually abused his 13-year-old step-daughter B.D. The abuse took place on multiple occasions over a 3-month period.

---

[1] The facts are drawn from the evidence presented at trial, viewed in the light most favorable to the State. Doc. 10-14, Ex. B (Trial Tr.); *see also Jackson v. Virginia*, 443 U.S. 307 (1979).

Cannon's abuse included rubbing his penis on B.D.'s vagina, digitally penetrating B.D.'s vagina, kissing B.D.'s vagina, touching B.D.'s breasts and vagina, and lewdly exposing his penis to B.D. Cannon also asked B.D. if she would let him put his penis in her mouth in exchange for money.

Cannon was charged in Wakulla County Circuit Court Case No. 2014-CF-92, with three counts of Sexual Battery on a Child by a Person with Familial or Custodial Authority (Counts I-III), two counts of Lewd or Lascivious Molestation of a Child (Counts IV-V), and one count of Lewd or Lascivious Exhibition in the Presence of a Child (Count VI). Doc. 10-1, Ex. A at 1-2.[2] The defense argued reasonable doubt, emphasizing the lack of physical evidence to corroborate B.D.'s testimony. Cannon testified in his own defense.

The jury found Cannon guilty of all counts as charged. Doc. 10-14, Ex. B. The trial court adjudicated Cannon guilty of the offenses and sentenced him to 30 years of imprisonment followed by 15 years on sex offender probation for each Sexual Battery; 15 years of imprisonment followed by 15 years on sex offender probation for each Lewd or Lascivious Molestation; and 15 years of imprisonment followed

---

[2] Citations to the state-court record are to the electronically-filed exhibits attached to the State's answer. Doc. 10. The citation references the docket entry number followed by the lettered exhibit. Citations to page numbers of an exhibit are to the page numbers of the original document.

by 15 years on sex offender probation for the Lewd Exhibition, all terms of imprisonment to be served concurrently. Doc. 10-3, Ex. D.

Cannon successfully challenged his sentences and was resentenced to the same terms of imprisonment, but no probation. *See Cannon v. State*, No. 1D15-5710, 225 So. 3d 896 (Fla. 1st DCA 2017) (Mem.) (copy at Doc. 10-6, Ex. H) (affirming Cannon's convictions but remanding for resentencing on all counts); *see also* Doc. 10-7, Ex. I (Am. J. & Sentence). On February 20, 2019, the Florida First District Court of Appeal ("First DCA") affirmed the sentences *per curiam* and without written opinion. *Cannon v. State*, No. 1D17-4947, 264 So. 3d 132 (Fla. 1st DCA 2019) (Table) (copy at Doc. 10-9, Ex. K).

On July 9, 2019, Cannon filed a *pro se* motion for postconviction relief under Florida Rule of Criminal Procedure 3.850. Doc. 10-16, Ex. M. The state circuit court denied relief. Doc. 10-17, Ex. P. The First DCA affirmed, *per curiam* and without written opinion. *Cannon v. State*, No. 1D20-2259, 316 So. 3d 678 (Fla. 1st DCA 2021) (Table). The mandate issued June 17, 2021. Doc. 10-13, Ex. Q. Cannon's motion for rehearing was denied on July 27, 2021. *Id*.

Cannon filed his *pro se* federal habeas petition on August 9, 2021. Doc. 1. The petition raises eight claims. *Id*. at 11-37. The State asserts that each claim fails for one or both of these reasons: (1) the claim is procedurally defaulted; (2) the state

court's rejection of the claim was consistent with clearly established federal law. Doc. 10.

## II.  RELEVANT LEGAL PRINCIPLES

### A.    Federal Habeas Exhaustion Requirement and Procedural Default

"To respect our system of dual sovereignty, the availability of habeas relief is narrowly circumscribed." *Shinn v. Ramirez*, 596 U.S. ___, 142 S. Ct. 1718, 1730 (2022) (citations omitted). One such constraint is the exhaustion requirement and corollary principle of procedural default. *See* 28 U.S.C. § 2254(b); *Shinn*, 142 S. Ct. at 1731-32.

Section 2254 "requires state prisoners to 'exhaust the remedies available in the courts of the State' before seeking federal habeas relief." *Shinn*, 142 S. Ct. at 1732 (quoting 28 U.S.C. § 2254(b)(1)(A)) (alteration adopted). "To satisfy the exhaustion requirement, the petitioner must have fairly presented the substance of his federal claim" to the state's highest court, either on direct appeal or on collateral review. *Picard v. Connor*, 404 U.S. 270, 277-78 (1971); *Castille v. Peoples*, 489 U.S. 346, 351 (1989); *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999) ("[S]tate prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process.").

A petitioner "fairly" presents the substance of his federal claim when he describes the claim "such that [the state courts] are permitted the 'opportunity to apply controlling legal principles to the facts bearing upon his constitutional claim.'" *Kelley v. Sec'y Dep't of Corr.*, 377 F.3d 1317, 1344 (11th Cir. 2004) (quoting *Picard*, 404 U.S. at 277); *French v. Warden, Wilcox State Prison*, 790 F.3d 1259, 1270-71 (11th Cir. 2015) (reaffirming that a habeas petitioner must "present his claims to the state court 'such that a reasonable reader would understand each claim's particular legal basis and specific factual foundation.'" (quoting *Kelley*, 377 F.3d at 1344-45)).

When a petitioner fails to exhaust his federal claim and the state court remedy no longer is available, that failure to exhaust is a procedural default. *O'Sullivan*, 526 U.S. at 839-40; *see also Bailey v. Nagle*, 172 F.3d 1299, 1303 (11th Cir. 1999) (holding that when a petitioner fails to properly exhaust a federal claim in state court, and it is obvious that the unexhausted claim now would be procedurally barred under state law, the claim is procedurally defaulted).

> Together, exhaustion and procedural default promote federal-state comity. Exhaustion affords States an initial opportunity to pass upon and correct alleged violations of prisoners' federal rights, and procedural default protects against the significant harm to the States that results from the failure of federal courts to respect state procedural rules. Ultimately, it would be unseemly in our dual system of government for a federal district court to upset a state court conviction without giving an opportunity to the state courts to correct a constitutional violation, and to do so consistent with their own procedures.

*Shinn*, 142 S. Ct. at 1732 (internal quotation marks and citations omitted, alteration adopted).

A petitioner seeking to overcome a procedural default must "demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claim[ ] will result in a fundamental miscarriage of justice." *Coleman v. Thompson*, 501 U.S. 722, 750 (1991); *Lucas v. Sec'y, Dep't of Corr.*, 682 F.3d 1342, 1352–53 (11th Cir. 2012). A petitioner establishes "cause" by showing that an objective factor external to the defense impeded an effort to properly raise the claim in the state court. *Henderson v. Campbell*, 353 F.3d 880, 892 (11th Cir. 2003). A petitioner establishes "prejudice" by showing at least a reasonable probability that the proceeding's result would have been different. *Id*.

To satisfy the miscarriage of justice exception, the petitioner must show that "a constitutional violation has probably resulted in the conviction of one who is actually innocent." *Schlup v. Delo*, 513 U.S. 298, 327 (1995). "To establish the requisite probability, the petitioner must show that it is more likely than not that no reasonable juror would have convicted him." *Schlup*, 513 U.S. at 327. The *Schlup* standard is very difficult to meet:

> a substantial claim that constitutional error has caused the conviction of an innocent person is extremely rare. To be credible, such a claim requires [a] petitioner to support his allegations of constitutional error with new reliable evidence—whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence—that that was not presented at trial.

*Id.*, 513 U.S. at 327.

## B.    Section 2254 Standard of Review

A federal court "shall not" grant a habeas corpus petition on any claim that was adjudicated on the merits in state court unless the state court's decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court." 28 U.S.C. § 2254(d)(1). The United States Supreme Court explained the framework for § 2254 review in *Williams v. Taylor*, 529 U.S. 362 (2000).[3] Justice O'Connor described the appropriate test:

> Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts.  Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct

---

[3] Unless otherwise noted, references to Supreme Court's *Williams* case are to the majority holding, written by Justice Stevens for the Court (joined by Justices O'Connor, Kennedy, Souter, Ginsburg, and Breyer) in parts I, III, and IV of the opinion (529 U.S. at 367-75, 390-99); and Justice O'Connor for the Court (joined by Justices Rehnquist, Kennedy, Thomas, and—except as to the footnote—Scalia) in part II (529 U.S. at 403-13).  The opinion of Justice Stevens in Part II was joined by Justices Souter, Ginsburg, and Breyer.

> governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

*Id.*, 529 U.S. at 412-13 (O'Connor, J., concurring).

Under the *Williams* framework, the federal court must first determine the "clearly established Federal law," namely, "the governing legal principle or principles set forth by the Supreme Court at the time the state court render[ed] its decision." *Lockyer v. Andrade*, 538 U.S. 63, 71-72 (2003). After identifying the governing legal principle, the federal court determines whether the state court's adjudication is contrary to the clearly established Supreme Court case law. The adjudication is "contrary" only if either the reasoning or the result contradicts the relevant Supreme Court cases. *See Early v. Packer*, 537 U.S. 3, 8 (2002) ("Avoiding th[e] pitfalls [of § 2254(d)(1)] does not require citation to our cases – indeed, it does not even require awareness of our cases, so long as neither the reasoning nor the result of the state-court decision contradicts them.").

If the "contrary to" clause is not satisfied, the federal court determines whether the state court "unreasonably applied" the governing legal principle set forth in the Supreme Court's cases. The federal court defers to the state court's reasoning unless the state court's application of the legal principle was "objectively unreasonable" in light of the record before the state court. *See Williams*, 529 U.S. at 409; *Holland v. Jackson*, 542 U.S. 649, 652 (2004). "[E]ven a strong case for relief does not mean

the state court's contrary conclusion was unreasonable." *Harrington v. Richter*, 562 U.S. 86, 102 (2011).

Section 2254(d) also allows habeas relief for a claim adjudicated on the merits in state court where that adjudication "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2). The "unreasonable determination of the facts" standard is implicated only to the extent the validity of the state court's ultimate conclusion is premised on unreasonable fact finding. *See Gill v. Mecusker*, 633 F.3d 1272, 1292 (11th Cir. 2011). As with the "unreasonable application" clause, the federal court applies an objective test. *See Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003) (holding that a state court decision based on a factual determination "will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state court proceeding."). "The question under AEDPA is not whether a federal court believes the state court's determination was incorrect but whether that determination was unreasonable—a substantially higher threshold." *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007) (citing *Williams*, 529 U.S. at 410). AEDPA also requires federal courts to "presume the correctness of state courts' factual findings unless applicants rebut this presumption with 'clear and

convincing evidence.'" *Landrigan*, 550 U.S. at 473-74 (quoting 28 U.S.C. § 2254(e)(1)).

The Supreme Court has emphasized often that a state prisoner's burden under § 2254(d) is "difficult to meet, . . . because it was meant to be." *Richter*, 562 U.S. at 102. The Court elaborated:

> As amended by AEDPA, § 2254(d) stops short of imposing a complete bar on federal-court relitigation of claims already rejected in state proceedings. *Cf. Felker v. Turpin*, 518 U.S. 651, 664, 116 S. Ct. 2333, 135 L.Ed.2d 827 (1996) (discussing AEDPA's "modified res judicata rule" under § 2244). It preserves authority to issue the writ in cases where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with this Court's precedents. It goes no further. Section 2254(d) reflects the view that habeas corpus is a "guard against extreme malfunctions in the state criminal justice systems," not a substitute for ordinary error correction through appeal. *Jackson v. Virginia*, 443 U.S. 307, 332, n. 5, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979) (Stevens, J., concurring in judgment). As a condition for obtaining habeas corpus from a federal court, <u>a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement</u>.

*Richter*, 562 U.S. at 102-03 (emphasis added).

A federal court may conduct an independent review of the merits of a petitioner's claim only if it first finds that the petitioner satisfied § 2254(d). *See Panetti v. Quarterman*, 551 U.S. 930, 954 (2007). Even then, the writ will not issue

unless the petitioner shows that he is in custody "in violation of the Constitution or laws and treaties of the United States."  28 U.S.C. § 2254(a).

## C.    Federal Law Governing Claims of Ineffective Assistance of Counsel

The Supreme Court follows a two-pronged test for evaluating claims of ineffective assistance of counsel. *See Strickland v. Washington*, 466 U.S. 668 (1984). The petitioner must show (1) his counsel's performance was constitutionally deficient, and (2) the deficient performance prejudiced him. *See id.* at 687. "First, petitioner must show that 'counsel's representation fell below an objective standard of reasonableness.' Second, petitioner must show that 'there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" *Darden v. Wainwright*, 477 U.S. 168, 184 (1986) (quoting *Strickland*, 466 U.S. at 694).

The inquiry under *Strickland*'s performance prong is "whether counsel's assistance was reasonable considering all the circumstances." *Strickland*, 466 U.S. at 688. Trial counsel is "strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Id*. at 690. The burden to overcome that presumption and to show that counsel's performance was deficient "rests squarely on the defendant." *Burt v. Titlow*, 571 U.S. 12, 22-23 (2013).

*Strickland*'s prejudice prong requires a defendant to establish a "reasonable probability" of a different trial outcome. *See Strickland*, 466 U.S. at 694. A reasonable probability is one that sufficiently undermines confidence in the outcome. *Id.* at 694. "The likelihood of a different result must be substantial, not just conceivable." *Richter*, 562 U.S. at 112.

When a district court considers a habeas petition, the state court's findings of historical facts in the course of evaluating an ineffectiveness claim are subject to the presumption of correctness, while the performance and prejudice components are mixed questions of law and fact. *See Strickland*, 466 U.S. at 698. "Surmounting *Strickland*'s high bar is never an easy task." *Padilla v. Kentucky*, 559 U.S. 356, 371 (2010). "Establishing that a state court's application of *Strickland* was unreasonable under § 2254(d) is all the more difficult." *Richter*, 562 U.S. at 105 (citations omitted). The Supreme Court explained:

> The standards created by *Strickland* and § 2254(d) are both "highly deferential," and when the two apply in tandem, review is "doubly" so. The *Strickland* standard is a general one, so the range of reasonable applications is substantial. Federal habeas courts must guard against the danger of equating unreasonableness under *Strickland* with unreasonableness under § 2254(d). When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland's* deferential standard.

*Id.* (citations omitted).

## III.  DISCUSSION

**Ground One**      **"Petitioner was denied his rights to due process of law and a fair trial when the prosecutor during closing arguments made a misstatement of evidence that constituted fundament [sic] error, ultimately depriving Mr. Cannon of a fair trial as to the count of Sexual Battery upon a Child by a Person in Familial or Custodial Authority by penetration of the victim[']s vagina with a finger." Doc. 1 at 11.**

This claim centers on a statement by the prosecutor in his summation to the jury. The prosecutor argued:

> And specifically the State has alleged that her vagina was penetrated by his fingers. And these instruction tell you that object includes a finger.

> B.D. told you that over the course of these many months, when these acts would happen once or twice a week over the period of January through April, **that there were many times in which she felt him penetrate her vagina with his fingers**.

> Once necessary detail that I think you should pay attention to that she gave you in that CPT interview is that when she was asked whether or not he had ever hurt her, the answer that she gave was not, yeah, when he hit me, or yeah, when he accidentally knocked me over, it was, when he tried to penetrate me with his fingers, it hurt.

Doc. 10-14, Ex. B at 238-39 (emphasis added). The emphasized language is the comment Cannon challenges. Doc. 1 at 12. Cannon asserts that he exhausted this claim by presenting it in his direct appeal. *Id*. at 10.

The State asserts that Cannon procedurally defaulted his federal due process claim because his direct appeal presented the alleged error as a purely state-law

issue. In other words, Cannon did not apprise the First DCA that the prosecutor's comment not only violated state law, but also denied him the due process of law guaranteed by the Fourteenth Amendment. Doc. 10 at 16-19. The State alternatively argues that Cannon's federal claim lacks merit, because the prosecutor's statement was a fair comment on the evidence. *Id*. at 18.

Cannon's reply does not address the State's procedural default defense. Doc. 17. This Court need not examine the procedural default issue, because even assuming to Cannon's benefit that he exhausted a federal claim about due process by citing two federal cases in his direct appeal brief, Doc. 10-15, Ex. E at 33-34, he fails to meet § 2254(d)'s demanding standard.[4]

---

[4] If Cannon's direct appeal brief did *not* fairly present the federal constitutional nature of his claim to the First DCA, then Cannon's federal claim would be procedurally defaulted, because any attempt to return to state court to exhaust the federal claim would be procedurally barred under Florida law. *See Bailey v. Nagle*, 172 F.3d 1299, 1303 (11th Cir. 1999); *see also Smith v. State*, 453 So. 2d 388, 389 (Fla. 1984) (claims that could have been raised on direct appeal are foreclosed from consideration under postconviction relief); Fla. R. Crim. P. 3.850(c).

Cannon makes none of the required showings to excuse the procedural default. It would be unconvincing for him to argue that the cause of his default was appellate counsel's ineffective assistance in failing to apprise the state court of the federal constitutional nature of his claim on direct appeal. Cannon did not raise an ineffective assistance of appellate counsel claim in state court. *See Edwards v. Carpenter*, 529 U.S. 446, 447 (2000) ("The comity and federalism principles underlying the doctrine of exhaustion of state remedies require an ineffective-assistance claim to be presented to the state courts as an independent claim before it may be used to establish cause for a procedural default.").

### A.    *Clearly Established Federal Law*

The "clearly established Federal law" governing Cannon's claim is the Supreme Court's decision in *Darden v. Wainwright*, 477 U.S. 168 (1986). *See Parker v. Matthews*, 567 U.S. 37, 45 (2012) (recognizing *Darden* as the clearly established Federal law governing habeas petitioner's due process claim arising from prosecutor's comment during closing argument). Cannon must establish that the prosecutor's comment was improper and that the improper comment "so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Darden*, 477 U.S. at 181. "[B]ecause the *Darden* standard is a very general one," courts have "more leeway . . . in reaching outcomes in case-by-case determinations." *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004).

### B.    *Cannon Is Not Entitled to Habeas Relief*

The First DCA's summary affirmance of Cannon's convictions is an "adjudication on the merits" of Cannon's due process claim, and is reviewed under § 2254(d)'s deferential standard. *See Richter*, 562 U.S. at 99 ("When a federal claim has been presented to a state court and the state court has denied relief, it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary); *id*. at 100 ("This Court now holds and reconfirms that § 2254(d) does not require a state court to give

reasons before its decision can be deemed to have been 'adjudicated on the merits.'").

There has been no statement of reasons by any state court for rejecting Cannon's due process claim, because Cannon did not object to the comment at trial, and the First DCA affirmed Cannon's convictions without explanation. "Where a state court's decision is unaccompanied by an explanation," a petitioner's burden under § 2254(d) is to "show[ ] there was no reasonable basis for the state court to deny relief." *Richter,* 562 U.S. at 98. "[A] habeas court must determine what arguments or theories supported or, as here, could have supported, the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of [the United States Supreme] Court." *Id.* at 102.

One theory that could have supported the First DCA's decision is that the prosecutor's comment was not improper because he was advocating for a conclusion that reasonably could be reached from the evidence. B.D. testified:

Q  [Prosecutor]  Okay. B.D., on these dates or any of these dates, did he ever touch your vagina with his hands?

A  [B.D.]  Yes.

**Q  Okay. And what did he do with his hands?**

**A  He just, like, was touching my vagina and –**

Page 16 of 53

**Q  Okay. Was he trying to put his fingers inside?**

**A  A couple of times he did, but –**

Q  It's okay. You stated that on April 3rd that he had kissed your vagina. Had he ever done that before?

A  Other times that he had – like, when I was in his room he did.

Doc. 10-14, Ex. B at 60 (emphasis added).

During the CPT interview, B.D. stated:

MR. JEFFRIES [CPT Interviewer]  Okay. Had he ever touched with [sic] your private with anything other than his mouth and his privates?

B.D.  Well, one time he did it with his, like, fingers, but, like – I like, pushed him away before –

MR. JEFFRIES  Okay. Tell me about the time that he touched you with his finger.

B.D.  It was basically the same thing. Like, he'd brought me in his room, and, like, kissed my private, and then pulled my pants down and was, like, on me. And then he'd, like, reached his hand down and he touched it.

        . . . .

MR. JEFFRIES  Okay. And what did his hands do when he touched your privates?

B.D.  He was just, like, touching it. And then, like – I mean, it wasn't long, because I kept pushing his hand off of me so he didn't.

MR. JEFFRIES  Okay. What – were his hands inside or outside of your privates when he was doing that?

Page 17 of 53

B.D.  Like, it didn't go – like I said, it wasn't touching – like, wasn't trying to get to the inside, but it wasn't like inside yet.

Doc. 10-14, Ex. B at 116-18. Later in the interview, B.D. explained:

MR. JEFFRIES  Okay. Has there ever been a time when he'd hurt you when you were trying to get away?

B.D.  I mean, no. Like – and, like, hurt when I was, like, pulled back or anything (unintelligible).

MR. JEFFRIES  Okay. Has there ever been a time when he did hurt you?

**B.D.  I mean, the times when he would try to, like touch my private with his hands, he would, like, hurt me when I – when he tried to put his fingers, like, in me.**

**MR. JEFFRIES  Okay. Did that happen more than once or only one time?**

**B.D.  Like, twice, within all of the times.**

Doc. 10-14, Ex. B at 130 (emphasis added).

This evidence reasonably supports the argument that on more than one occasion Cannon attempted to insert his fingers inside B.D.'s vagina, and in doing so, penetrated her vagina to the point where it hurt her.[5] Because Cannon has not

---

[5] In Florida, "proof of even the slightest penetration is sufficient to sustain a conviction of sexual battery." *Marles v. State*, 937 So. 2d 720, 720 (Fla. 5th DCA 2006); *Davis v. State*, 569 So. 2d 1317, 1319 (Fla. 1st DCA 1990) (same); *Pride v. State*, 511 So. 2d 1068, 1070 (Fla. 1st DCA 1987) ("penetration" is "any penetration, no matter how slight").

shown that the First DCA's decision to reject his claim "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement," he is not entitled to habeas relief on Ground One. *Richter*, 562 U.S. at 103.

**Ground Two**      **"Petitioner was denied his rights to due process of law and a fair trial when the trial court erred as a matter of law by denying defense counsel's motion for judgment of acquittal on the count of Sexual Battery upon a Child by a Person in Familial or Custodial Authority by penetration of the victim[']s vagina with a finger." Doc. 1 at 13.**

Cannon alleges that his conviction for digital penetration of B.D.'s vagina (Count II) violates the Due Process Clause because there was insufficient evidence that he penetrated B.D.'s vagina with his fingers. Doc. 1 at 13-15. Cannon asserts that he exhausted this claim by presenting it in his direct appeal. *Id.* at 39.

The State asserts that Cannon procedurally defaulted this federal due process claim because (1) he did not preserve the specific penetration argument at trial in his motion for judgment of acquittal, and (2) even if he sufficiently preserved it, his direct appeal brief did not exhaust a federal sufficiency-of-the-evidence claim—only a state-law claim. Doc. 10 at 19-21. The State alternatively argues that Cannon's due process claim lacks merit, because it turns on an issue of state law, and this court must defer to that state-law determination. *Id.* at 22.

Cannon's reply does not address the State's procedural default defense. Doc. 17.

## A.    *Cannon's Claim Is Procedurally Defaulted*

Federal habeas courts "do not require a verbatim restatement of the claims brought in state court," but the claims that the prisoner presented to the state court must allow "a reasonable reader [to] understand each claim's particular legal basis and specific factual foundation." *McNair v. Campbell*, 416 F.3d 1291, 1302 (11th Cir. 2005) (internal quotation marks and citation omitted). The Supreme Court has stated that a petitioner can indicate the federal-law basis for his claim "by citing in conjunction with the claim the federal source of law on which he relies or a case deciding such a claim on federal grounds, or by simply labeling the claim 'federal.'" *Baldwin v. Reese*, 541 U.S. 27, 32 (2004). But a habeas petitioner does not exhaust his remedies by merely (1) going through the state courts; (2) presenting to the state courts all the facts necessary to support the federal claim; or (3) presenting to the state courts "a somewhat similar state-law claim." *McNair*, 416 F.3d at 1302 (internal quotation marks and citation omitted).

For example, in *Preston v. Secretary, Florida Department of Corrections*, a Florida prisoner filed a federal habeas petition claiming that his premeditated murder conviction violated his federal due process rights because the State failed to present

sufficient evidence of premeditation. 785 F.3d 449, 451 (11th Cir. 2015). The Eleventh Circuit held that the federal sufficiency-of-the-evidence claim was procedurally defaulted, because Preston failed to present it to the state court in his direct appeal. *Id*. at 456–57. In state court, Preston "did not even hint . . . that he intended to raise a federal claim." *Preston*, 785 F.3d at 458. His direct-appeal brief (1) did not rely on a single federal case, but relied only on Florida cases discussing premeditation under Florida law; (2) never mentioned the federal Due Process Clause or any other federal constitutional provision; and (3) did not cite to, or mention, the standard from *Jackson v. Virginia*, 443 U.S. 307 (1979), for assessing sufficiency-of-the-evidence claims. *Preston*, 785 F.3d at 458-59.

Similarly, Cannon's direct-appeal brief did not raise a federal due process claim or cite to any federal cases when arguing that the trial court improperly denied his motion for judgment of acquittal. Cannon cited exclusively to state cases, and all of his substantive arguments addressed Florida law. Doc. 10-15, Ex. E at 27-32. The tenor of Cannon's narrow argument that the evidence did not satisfy Florida's standard for "penetration," did not bring a federal claim about due process to the First DCA's attention.[6] *See Preston*, 785 F.3d at 460 ("[I]t strikes us as surpassing

---

[6] Predictably, the State's answer brief in Cannon's direct appeal similarly relied exclusively on state-law cases and made no reference to federal due process or the *Jackson v. Virginia* standard. *See* Doc. 10-4, Ex. F at 6-15.

strange to say that the Florida Supreme Court reached a decision that was 'contrary to, or involved an unreasonable application of' *Jackson*, a case that was never presented to the court and that the court, therefore, had no opportunity to consider." (quoting 28 U.S.C. § 2254(d))).

Cannon's federal sufficiency-of-the-evidence claim is procedurally defaulted. *Preston, supra*; *see also, e.g., Cascante v. Florida*, 816 F. App'x 429, 431 (11th Cir. 2020) (Mem.) (habeas petitioner failed to exhaust a federal sufficiency-of-the-evidence claim in his direct appeal, because he did not raise any federal claims or cite to any federal cases when arguing that the State's evidence was insufficient to support a sexual battery conviction by vaginal digital penetration); *Ramos v. Sec'y, Dep't of Corr.*, 441 F. App'x 689, 696-97 (11th Cir. 2011) (same, where petitioner's state-court brief made only a passing reference to his federal constitutional right to due process in arguing that the trial court improperly denied his motion for judgment of acquittal on the premeditation element of murder); *Pearson v. Sec'y, Dep't of Corr.*, 273 F. App'x 847, 850 (11th Cir. 2008) (same, where petitioner's direct-appeal brief cited exclusively to state cases, and all of his substantive arguments addressed Florida law, specifically that there was no evidence of reasonable fear on the part of the victim as defined by state law); *Cook v. McNeil*, 266 F. App'x 843, 845-46 (11th Cir. 2008) (same, where petitioner's direct-appeal brief cited

exclusively to state cases and all of his substantive arguments addressed Florida law; "the tenor of [petitioner's] narrow arguments that challenged the characterization of his knife and the sequence of his actions under the Florida statute did not bring a federal claim about due process to the attention of the state appellate court.").

Cannon makes none of the requisite showings to excuse his procedural default. Cannon's procedural default bar federal habeas review of Ground Two.

**Ground Three**        **"Petitioner was denied his rights to effective assistance of counsel and due process of law when trial counsel failed to object to the prosecutor requesting that the courtroom be cleared of any 'non-essential' personnel." Doc. 1 at 15.**

Cannon alleges that his trial counsel was ineffective for agreeing to the prosecutor's request to close the courtroom during B.D.'s testimony under Fla. Stat. § 918.16, and for failing to object when the closure was applied to his father and extended for the duration of the trial. Doc. 1 at 15-18.[7] Cannon claims that he was prejudiced by counsel's failure to object because:

---

[7] Section 918.16, Florida Statutes, provides:

> If the victim of a sex offense is testifying concerning that offense in any civil or criminal trial, the court shall clear the courtroom of all persons upon the request of the victim, regardless of the victim's age or mental capacity, except that parties to the cause and their immediate families or guardians, attorneys and their secretaries, officers of the court, jurors, newspaper reporters or broadcasters, court reporters, and, at the request of the victim, victim or witness advocates designated by the state attorney may remain in the courtroom.

(1) The entire trial proceedings were closed to the public and Petitioner's family;

(2) Had Petitioner's father not have been excluded from the trial proceedings, the victim would not have made the assertions she did in court;

(3) The victim's testimony would have been more favorable to Petitioner;

(4) The victim's whole demeanor would have been more favorable to Petitioner, as the victim had a close family band with Petitioner's father;

(5) The trial court was not held to act within the law;

(6) A hearing was not held as required by law due to counsel failing to object;

(7) the issue was not preserved for direct appellate review and therefore could not be raised on direct appeal;

(8) Petitioner's family could have possibly pointed out areas of the victim's testimony that was false;

(9) Petitioner has been denied his rights to Due Process of Law and a fair trial as well as ineffective representation by counsel.

Doc. 1 at 17 (verbatim).

The State asserts that this claim does not warrant habeas relief because Cannon fails to meet § 2254(d)'s demanding standard. Doc. 10 at 22-27.

---

Fla. Stat. § 918.16(2).

A.    *The State Court's Decision*

Cannon presented this claim to the state court as "Ground Two" of his Rule

3.850 motion. Doc. 10-16, Ex. M at 10-16. The state circuit court denied relief as

follows:

> Defendant alleges trial counsel was ineffective for failing to object to the prosecutor's request to clear the courtroom of any "non-essential" personnel prior to the victim's testimony. Defendant says closing court prejudiced his right to a public trial but appears to only take issue with the fact that his father was removed from the courtroom absent any *Waller* findings.
>
> The courtroom was cleared without objection from the defense, so the trial court was not required to make any findings. *See Whitson v. State*, 791 So. 2d 544 (Fla. 2nd DCA 2001). Defendant has not demonstrated how he was prejudiced by the closure. The idea that the jury would not have convicted the Defendant had his dad been allowed to remain in the courtroom is too speculative.
>
> Additionally, the record reflects Defendant believed his father should have been a witness for the defense. *Exh 4 – Jury Trial Transcript page 11 lines 15-18*. Had his dad testified he would have been excluded from the courtroom anyway because of the witness sequestration rule. Ground Two is denied.

Doc. 10-17, Ex. P at 3-4. The First DCA summarily affirmed without explanation.

Doc. 10-9, Ex.. K.

B.    *Cannon Is Not Entitled to Habeas Relief*

The First DCA's summary affirmance is an "adjudication on the merits" of

Cannon's claim, and is reviewed under § 2254(d)'s deferential standard. *See Richter*,

562 U.S. at 99, 100. Where, as here, there has been one reasoned state judgment rejecting a federal claim followed by a later unexplained order upholding that judgment, federal courts employ the following "look through" presumption: "[T]he federal court should 'look through' the unexplained decision to the last related state-court decision that does provide a relevant rationale. It should then presume that the unexplained decision adopted the same reasoning." *Wilson v. Sellers*, 584 U.S. —, 138 S. Ct. 1188, 1192 (2018). Consistent with *Wilson*, this court presumes that the First DCA rejected Cannon's claim for the reasons provided by the state circuit court.

The United States Supreme Court has held that when a defendant raises a public-trial violation via an ineffective-assistance-of-counsel claim, "*Strickland* prejudice is not shown automatically." *Weaver v. Massachusetts*, 582 U.S. ___, 137 S. Ct. 1899, 1911 (2017). Rather, "the burden is on the defendant to show . . . a reasonable probability of a different outcome in his or her case. . . ." *Weaver*, 137 S. Ct. at 1911.[8] Although the Court in *Weaver* explicitly confined its holding to "the

---

[8] In dicta, the *Weaver* Court assumed, without deciding, that a petitioner also could satisfy *Strickland*'s prejudice prong by making an alternative showing that counsel's error "rendered the trial fundamentally unfair." *Weaver*, 137 S. Ct. at 1911. Dicta, however, is not "clearly established Federal law" for purposes of § 2254(d) review. *Williams*, 529 U.S. at 365 ("[T]he phrase 'clearly established Federal law, as determined by [this] Court' refers to the holdings, as opposed to the dicta, of this Court's decisions as of the time of the relevant state-court decision.").

context of trial counsel's failure to object to the closure of the courtroom during jury selection," *Weaver*, 137 S. Ct. at 1907, there has been no decision of the Supreme Court applying a standard different than *Strickland*'s "reasonable probability" prejudice standard to an ineffective-assistance claim for failure to object to a public-trial violation *during the evidentiary phase of the trial*. In the absence of a Supreme Court case modifying the prejudice inquiry for this latter type of claim—the claim Cannon raises here—the "clearly established Federal law" is *Strickland*'s reasonable-probability-of-a-different-trial-outcome standard, as applied in *Weaver*.

Consistent with *Strickland* and *Weaver*, the state court required Cannon to show that he was prejudiced by counsel's failure to object. To obtain habeas relief, therefore, Cannon must establish that the state court's application of *Strickland*'s prejudice standard was unreasonable. Cannon fails to make that showing.

The facts relevant to the courtroom closure are these. When the prosecutor called B.D. to testify, this exchange occurred:

> MR. DENEEN [Prosecutor]:  Judge, at this time the State would ask that the courtroom be cleared of any nonessential personnel.
>
> MR. HARRISON [Defense Counsel]:  Agree.
>
> THE COURT:  Okay. At this time, pursuit [sic] to Florida Statute, I'm going to clear the courtroom of all nonessential court personnel while this testimony occurs. So I'd ask everybody to step outside.

Doc. 10-14, Ex. B at 40.

Page 27 of 53

Immediately following B.D.'s testimony, the trial court ordered a 10-minute recess for a jury break. *Id*. at 75-76. During the recess, the prosecutor informed the court that his next witness was the CPT investigator. *Id*. at 76. The prosecutor did not ask to extend the closure order to the CPT investigator's testimony, or to any other portion of the trial. *Id*. Cannon acknowledges that "Nowhere in the court's ruling did the judge rule that the courtroom would be closed for the remainder of the entire trial." Doc. 1 at 16.

When the jury returned from the 10-minute recess, the trial resumed. Doc. 10-14, Ex. B at 76. A new witness (the CPT investigator) entered the courtroom and testified.[9] *Id*. at 78-90.

After the CPT investigator testified and the CPT interview was published to the jury, there was a 1-hour lunch recess. *Id*. at 130-31.

After the lunch recess, the trial resumed. *Id*. at 131. Two more State witnesses entered the courtroom, separately, and testified—a law enforcement witness and a DNA expert. *Id*. at 132-59. After the State rested, Cannon testified. *Id*. at 165-83.

---

[9] The CPT investigator had been subject to not only the closure order, but also the witness-sequestration rule invoked by the defense. Doc. 10-14, Ex. B at 27; *see also Dumas v. State*, 350 So. 2d 464, 466 (Fla. 1977) ("[The] rule of sequestration is a procedural device available to purify trial testimony when counsel for either side believes it to be advantageous.").

Cannon does not allege, and the trial transcript does not indicate, that anyone (1) inquired about the status of the courtroom after B.D. testified, or (2) attempted but was denied re-entry into the courtroom after B.D. testified. *See* Doc. 1 at 16-18; Doc. 10-14, Ex. B at 75-278. In state court, Cannon submitted an affidavit from his father which stated: "I was, against my wishes, ordered to leave the courtroom for my son's entire trial." *See* Doc. 10-16, Ex. M at 56 (Cannon's "Exhibit F"). But the record demonstrates—and Cannon acknowledges—that the trial judge ordered the public to leave the courtroom only for B.D.'s testimony. Doc. 10-14, Ex. B at 40.

Cannon asserts that "once the victim testified the courtroom was never reopened to the public." Doc. 1 at 16. Cannon draws this conclusion from his father's statement that "no one was brought back in the courtroom after they closed it." Doc. 10-16, Ex. M at 56. But by the terms of the closure order, the courtroom was "reopen" to the public once B.D.'s testimony concluded. Cannon's father does not allege, nor does the trial record indicate, that during the 10-minute recess following B.D.'s testimony—or at any time thereafter including the 1-hour lunch recess—he or anyone else (1) sought re-entry into the courtroom and was denied, or (2) was told that the courtroom was closed.

Within this context, this Court reviews the reasonableness of the state court's rejection of Cannon's ineffective-assistance claim. The state court rejected Cannon's claim for failure to satisfy *Strickland*'s prejudice standard.

Cannon alleges that he was prejudiced by counsel's failure to object when the prosecutor requested closure of the courtroom for B.D.'s testimony, because he would have received a hearing and particularized findings under *Waller v. Georgia*, 467 U.S. 39, 44-48 (1984), had counsel objected. *See* Doc. 1 at 16. Cannon, however, must show more than that he would have received a hearing and factual findings had counsel objected. He must show a reasonable probability that *the outcome of his trial would have been different*.

Cannon suggests that had counsel objected—and been able to persuade the court during the hearing to allow his immediate family to remain in the courtroom— the presence of his father would have caused B.D. to: (1) "not . . ma[k]e the assertions she did in court;" (2) testify "more favorabl[y] to Petitioner;" and (3) change her demeanor to one "more favorable to Petitioner." Doc. 1 at 17. Cannon's allegations are just as conclusory and speculative as those the Eleventh Circuit rejected in *Purvis v. Crosby*, 451 F.3d 734 (11th Cir. 2006):

> Purvis cannot show that an objection from his counsel would have caused the factfinder to have a reasonable doubt about his guilt. If counsel had objected in a timely fashion and had persuaded the trial judge not to partially close the courtroom, there is no reason to believe

Page 30 of 53

that would have changed the victim's testimony in a way which would have created a reasonable doubt in the jury's mind. The victim could just as well have been a more sympathetic or credible witness if forced to testify publicly. We do not know, and when we do not know the party with the burden loses, and here that party is Purvis. *See Strickland*, 466 U.S. at 694, 104 S. Ct. at 2068 ("The defendant must show . . . .").

*Purvis*, 451 F.3d at 738-39.

The fact that B.D. "had a close family band with Petitioner's father," Doc. 1 at 17, does not raise a substantial likelihood that she would have testified differently. Notably, defense counsel questioned B.D. about Cannon's father, including the fact that he "care[d] a great deal about [B.D.]" Doc. 10-14, Ex. B at 65. That did not alter B.D.'s testimony concerning Cannon's sexual wrongdoing. *Id*. at 65-72. Later, B.D. testified on re-direct that the reason she did not tell any family members about Cannon's abuse was because, "I just didn't want to see them hurt. I didn't know what would happen." *Id*. at 74.

Cannon also cannot meet his burden to show prejudice by claiming that had counsel objected but been *unable* to persuade the court to allow his immediate family to remain in the courtroom, the issue would have led to a reversal of his conviction instead of the affirmance that occurred. *See* Doc. 1 at 16-17. A fairminded jurist could conclude, as the Eleventh Circuit did in *Purvis*, that this argument is flawed. *Purvis*, 451 F.3d at 739. The flaw is that it focuses on the outcome of the appeal, which is contrary to the Supreme Court's instruction in *Strickland* that, "when the

claimed error of counsel occurred at the guilt stage of a trial (instead of on appeal) we are to gauge prejudice against the outcome of the trial: whether there is a reasonable probability of a different result at trial, not on appeal." *Purvis*, 451 F.3d at 739 (citing *Strickland*, 466 U.S. at 694-95); *Weaver*, 137 S. Ct. at 1912 (requiring the petitioner to "show[ ] prejudice in the ordinary sense, *i.e.*, a reasonable probability that the jury would not have convicted him if his attorney had objected to the closure.").

In short, the state court reasonably determined that Cannon failed to establish that he was prejudiced by counsel's failure to object to the prosecutor's request for closure.

Cannon also seems to fault counsel for failing to object to the continued absence of his family after B.D.'s testimony concluded. Doc. 1 at 16. Cannon's argument is unconvincing for several reasons. First, the trial judge's closure order itself—which was announced in open court—explicitly specified that the closure was limited to B.D.'s testimony. Cannon fails to identify what source—or whose actions—formed the basis for an "objection." Neither *Waller*, nor any other Supreme Court case, requires a court to announce that the courtroom is "reopened," or to invite those excluded to return.

Additionally, in this case there was a 10-minute recess *after* B.D.'s testimony concluded. This break in the proceedings was an opportunity for the public to re-enter the courtroom. Cannon does not allege—and the record does not indicate—that during this recess any member of the public sought to re-enter the courtroom and was denied. Cannon alleges: "All parties knew that the people who were ordered out of the courtroom were standing outside waiting for the victim to finish giving her testimony so they could be allowed back into the courtroom." Doc. 1 at 16. But Cannon does not explain why even he, himself, did not inquire to the judge or his counsel about his family's continued absence after the closure order expired.

Additionally, after trial resumed from the 10-minute recess, a new witness (the CPT investigator) entered the courtroom. Cannon does not allege—and the record does not indicate—that at that time any member of the public also sought to re-enter the courtroom but was denied. After the CPT investigator testified, there was a 1-hour lunch recess. Cannon does not allege—and the record does not indicate—that when the trial resumed after the lunch recess, any member of the public sought to re-enter the courtroom but was denied.

On these facts, Cannon has not carried his burden to show that "the state court's decision to reject his ineffective-assistance claim 'was so lacking in justification that there was an error well understood and comprehended in existing

law beyond any possibility for fairminded disagreement.'" *Davis v. Ayala*, 576 U.S. 257, 269-70 (2015) (quoting *Richter*, 562 U.S. at 103); *see also, e.g.*, *Richards v. Sec'y, Dep't of Corr.*, No. 20-14700, 2022 WL 194305, at *4 (11th Cir. Jan. 21, 2022) (unpublished decision) ("Because, at worst, fairminded jurists could disagree on the correctness of the state court's decision, [the petitioner] has not shown he is entitled to federal habeas relief under § 2254(d)." (internal quotation marks and citation omitted)).

The state court's rejection of Cannon's ineffective-assistance claim was not contrary to, and did not involve an unreasonable application of, clearly established Federal law. Nor was the decision based on an unreasonable determination of the facts. Cannon is not entitled to habeas relief on Ground Three.[10] *See. Purvis*, 451

---

[10] Because the Supreme Court's dicta in *Weaver* is not "clearly established Federal law," the state court's failure to explicitly address the "fundamental fairness" question does not strip its decision of deference under 28 U.S.C. § 2254. Moreover, even a *de novo* review of the fundamental-fairness question would not warrant habeas relief. The record shows that although the trial court excluded all members of the public during B.D.'s testimony, it did not exclude the public from the remainder of Cannon's trial. *See Weaver*, 137 S. Ct. at 1913 (referencing the concerns underlying the public-trial right, including trials held in secret and in remote places). There is no indication that the absence of Cannon's family (or other members of the public) was caused by the court, court personnel, the prosecutor, or defense counsel. There was a record made of the trial that does not indicate any basis for concern. *See Weaver*, 137 S. Ct. at 1913. There is no indication that any witness lied; no suggestion of misbehavior by the prosecutor, judge, or any other party; and no suggestion that any of the participants failed to approach their duties with the

F.3d at 738-43 (denying, on *de novo* review, ineffective-assistance claim alleging public-trial violation); *Hester v. Sprayberry*, No. 17-12188-J, 2017 WL 11621389 (11th Cir. Nov. 20, 2017) (unpublished table decision) (denying similar claim under § 2254(d) review).

**Ground Four**    **"Petitioner was denied his rights to effective assistance of counsel, due process of law and a fair trial when counsel failed to negotiate and secure a plea offer where the record clearly reflects that a minimal effort by counsel would have resulted in a ten year plea." Doc. 1 at 18.**

Cannon alleges that prior to trial, he told trial counsel to "investigate and prepare for trial while also seeking the best possible plea deal." Doc. 1 at 19. Cannon alleges that as trial approached, he asked counsel if there were any plea offers and counsel responded that he "was not aware" of any. On the morning of jury selection, the prosecutor indicated that he had not spoken with the victim to determine the terms of a plea offer, but that it would involve at least 10 years of imprisonment. Ultimately, the prosecutor "never spoke with the victim about a plea." Doc. 1 at 19-20. Cannon blames his trial counsel for the lack of a plea offer:

> [I]f trial counsel had been acting as a competent reasonable professional counsel and pursued a plea with the state, the state would have contacted the victim who would have agreed to allow Petitioner to plea to a ten year prison sentence, so she would not have to get on the stand and testify. This would have lead [sic] to the state offering Petitioner a

---

neutrality and solemn purpose the justice system requires. *See Weaver*, 137 S. Ct. at 1913; *Waller*, 467 U.S. at 46-47.

> plea for ten years in the Florida Department of Corrections. In which, the state would not have withdrawn said plea, and Petitioner would have accepted the pela of ten years which would have resulted in the trial court accepting the plea and sentencing Petitioner to ten years in the Florida Department of Corrections.

*Id*. at 20.

The State asserts that Cannon is not entitled to habeas relief because he fails to meet § 2254(d)'s demanding standard. Doc. 10 at 27-29.

### A.    *The State Court's Decision*

Cannon presented this claim to the state court as "Ground Six" of his Rule 3.850 motion. Doc. 10-16, Ex. M at 28-30. The state circuit court denied relief as follows:

> Ground Six alleges trial counsel was ineffective for not making more of an effort to secure a plea deal. Defendant's claim is clearly refuted by the record. At the *Nelson* hearing held right before trial, the Defendant indicated he did not feel he was receiving effective representation because defense counsel kept trying to get him to accept a plea. *See Exh 4 at page 11 lines 2-14.*
>
> Defendant made it clear that he wanted to fight the case, so he cannot complain now that trial counsel was deficient for not negotiating a plea on his behalf. *See Exh 4 at page 11 lines 11-14*. Additionally, the record reflects that trial counsel actually hounded the prosecutor about an offer. *Exh 7 – Jury Trial Transcript page 17 lines 8-11*. Ground Six is denied.

Doc. 10-17, Ex. P at 4-5. The First DCA summarily affirmed without explanation. Doc. 10-9, Ex.. K.

Page 36 of 53

**B.**   *Cannon Is Not Entitled to Habeas Relief*

The First DCA's summary affirmance is an "adjudication on the merits" of Cannon's claim, and is reviewed under § 2254(d)'s deferential standard. *See Richter*, 562 U.S. at 99, 100. Consistent with *Wilson*, this court presumes that the First DCA rejected Cannon's claim for the reasons provided by the state circuit court. *Wilson*, 138 S. Ct. at 1192.

In reviewing the state court's decision, this court defers to the state court's factual findings, because they are amply supported by the record and because Cannon has not rebutted them with clear and convincing evidence to the contrary. *Consalvo v. Sec'y for Dep't of Corr.*, 664 F.3d 842, 845 (11th Cir. 2011) ("AEDPA affords a presumption of correctness to a factual determination made by a state court; the habeas petitioner has the burden of overcoming the presumption of correctness by clear and convincing evidence.") (citing 28 U.S.C. § 2254(e)).

The trial record conclusively refutes every one of Cannon's allegations. *See* Doc. 10-2, Ex. C at 3-4 (Jury Selection Tr. reflecting counsel's attempts to negotiate a plea deal prior to *voir dire*); Doc. 10-14, Ex. B at 11 (Trial Tr. where Cannon complains about, and takes offense to, trial counsel encouraging him to consider a plea deal: "[H]e kind of pushes a plea on top of me. He's like pushing me, you know, I should think about a plea, like maybe suggesting that maybe I might [be] guilty,

Page 37 of 53

and I'm not. I'm innocent. I want to fight."); *Id.* at 17, 21-22 (trial counsel's description of his efforts to negotiate a plea deal and to convince Cannon to consider one); *Id.* at 22-23 (prosecutor's description of trial counsel's efforts to negotiate a plea deal and the prosecutor's reasons for not offering one).

The state court's rejection of Cannon's ineffective-assistance claim was based on a reasonable determination of the facts and was consistent with clearly established Federal law. *See Lafler v. Cooper*, 566 U.S. 156 (2012); *Missouri v. Frye*, 566 U.S. 134 (2012). Cannon is not entitled to federal habeas relief on Ground Four.

| | |
|---|---|
| **<u>Ground Five</u>** | **<u>"Petitioner was denied his constitutional rights to effective assistance of counsel and due process of law, when trial counsel presented a boilerplate motion for judgment of acquittal as to Count Two of the charging information." Doc. 1 at 22.</u>** |

Cannon alleges that trial counsel was ineffective for presenting only a boilerplate motion for judgment of acquittal on Count Two—sexual battery by digital penetration. Doc. 1 at 22-24. Counsel argued:

> At this time as to Counts I through VI, we would move for a judgment of acquittal. Our assertion is that there was not competent or substantial evidence presented as to any of these counts, which would establish a prima facie case of guilt against Mr. Canon. So, we would ask for a verdict of – judgment of acquittal.

Doc. 10-14, Ex. B at 160. Cannon asserts that had counsel argued that the victim's testimony indicated only that Cannon "tried" to insert his fingers inside her vagina,

there is a reasonable probability the sexual battery charge would have been dismissed and he would have received a shorter sentence. Doc. 1 at 22-25.

The State asserts that Cannon is not entitled to habeas relief because he fails to satisfy § 2254(d)'s demanding standard. Doc. 10 at 29-32.

### A.    *The State Court's Decision*

Cannon presented this claim to the state court as "Ground Three" of his Rule 3.850 motion. Doc. 10-16, Ex. M at 17-23. The state circuit court denied relief as follows:

> Ground Three alleges trial counsel was ineffective for making a "boilerplate" motion for judgment of acquittal.FN2 Defendant's claim appears to be that defense counsel did a poor job of arguing in favor of an acquittal for not stressing the point that the evidence (*i.e.*, the victim's testimony) only proved that the Defendant *tried* to digitally penetrate the victim's vagina.
>
> > FN2  It seems the Defendant is arguing that the motion was insufficient only with respect to the sexual battery count involving penetration.
>
> Defense counsel asked for a judgment of acquittal on *all* counts based on insufficient competent evidence. *Exh 5 – Jury Trial Transcript page 160 lines 2-7*. He was not deficient in moving for the verdict of acquittal nor was the defense prejudiced in any way. There was enough evidence to convict on all counts. *See Exh. 2*. Ground Three is denied.

Doc. 10-17, Ex. P at 4. The First DCA summarily affirmed without explanation. Doc. 10-9, Ex.. K.

### B.    *Cannon Is Not Entitled to Habeas Relief*

The First DCA's summary affirmance is an "adjudication on the merits" of Cannon's claim, and is reviewed under § 2254(d)'s deferential standard. *See Richter*, 562 U.S. at 99, 100. Consistent with *Wilson*, this court presumes that the First DCA rejected Cannon's claim for the reasons provided by the state circuit court. *Wilson*, 138 S. Ct. at 1192.

The state court reasonably determined that the State presented sufficient evidence to withstand a judgment of acquittal on Count Two and, therefore, counsel could not be deemed ineffective for failing to make the particular argument Cannon presses. In Florida, a trial court generally should not grant a motion for judgment of acquittal unless, "when viewed in a light most favorable to the State, the evidence does not establish a prima facie case of guilt." *Dupree v. State*, 705 So. 2d 90, 93 (Fla. 4th DCA 1998) (en banc). "When moving for a judgment of acquittal, a defendant admits not only the facts stated in the evidence, but also every conclusion favorable to the adverse party that a jury might fairly and reasonably infer from the evidence." *Lynch v. State*, 293 So. 2d 44, 45 (Fla. 1974). "The trial court has the task of reviewing the evidence to determine whether competent, substantial, evidence exists from which the jury could infer guilt to the exclusion of all other inferences." S*tate v. Law*, 559 So. 2d 187, 189 (Fla. 1989).

"Competent evidence is matter probative of the fact to be proved; that is, relevant evidence that does not fit within any rule of exclusion. Evidence is substantial if a reasonable mind might accept it to support a conclusion." *Brumley v. State*, 500 So. 2d 233, 234 (Fla. 4th DCA 1986). "Hence, a judgment of acquittal should not be granted where the State has produced competent, substantial evidence to support every element of the crime." *Gay v. State*, 607 So. 2d 454, 457 (Fla. 1st DCA 1992).

Here, even if counsel's motion was boilerplate, the State argued that B.D.'s testimony and statements during the CPT interview were sufficient to meet the State's burden on the element of penetration. Thus, the trial court considered the weight and sufficiency of the evidence on that particular element in denying the motion for JOA. Doc. 10-14, Ex. B at 160-62.

Second, B.D.'s testimony and statements during the CPT interview—which are detailed above—were sufficient to withstand a motion for JOA. *See* Doc. 10-14, Ex. B at 60, 116-18, 130. The evidence indicated "some entry into [B.D.'s vagina], however slight," by Cannon's fingers. *Richards v. State*, 738 So. 2d 415, 418 (Fla. 2d DCA 1999); *Marles*, 937 So. 2d at 720; *Davis*, 569 So. 2d at 1319; *Pride*, 511 So. 2d at 1070.

Accordingly, a fairminded jurist could agree with the state court's conclusion that Cannon failed to show deficient performance and prejudice under *Strickland*. Cannon is not entitled to federal habeas relief on Ground Five.

**Ground Six**       **"Petitioner has been denied his rights to effective assistance of counsel and due process of law when trial counsel failed to object to the prosecutor's improper comments during trial." Doc. 1 at 25.**

Cannon alleges that trial counsel was ineffective for failing to object when the prosecutor improperly "degraded" Cannon during cross-examination. Doc. 1 at 25. Cannon says that the prosecutor aggressively questioned him about his alcohol consumption and whether he ever referred to himself as having demons. *Id*. at 25-26 (citing Trial Tr. at 176-78, 181-82). The prosecutor also questioned Cannon about letters Cannon wrote to his then wife (B.D.'s mother), implying that the letters discussed Cannon's alcohol use. Cannon complains that the letters were not disclosed to the defense, and that while questioning Cannon about them, the prosecutor did this:

> The prosecutor continued to work this alcohol angle by suggesting that he possessed physical evidence in the form of letters authored by the Petitioner, wherein, the Petitioner concedes to be driven by alcohol and demon possession (T.T. pg. 181-182). The prosecutor then reached into his personal belongings and pulls out a package of letters and in a theatrical demonstration takes out his pocket knife, opens the package and says "then what are all these" (referring to letters) and slams them down on the podium as if they were all these

alcoholic, demon possessed confession letters and that the Petitioner was lying. . . .

Even though the trial transcript omits the prejudicial theatrical tricks of the prosecutor, these facts can be verified through an objective review of the court's audio video recording of the proceeding.

Doc. 1 at 25-26. Cannon faults counsel for failing to object.[11]

The State asserts that Cannon is not entitled to habeas relief because he fails to satisfy § 2254(d)'s demanding standard. Doc. 10 at 32-38.

A.    *The State Court's Decision*

Cannon presented this ineffective-assistance claim to the state court as "Ground One" of his Rule 3.850 motion. Doc. 10-16, Ex. M at 6-10. The state circuit court denied relief as follows:

Ground One alleges trial counsel was ineffective for failing to object to the prosecutor's improper comments. The prosecutor asked the Defendant if he remembered talking about certain things in some of the lettersFN1 to his wife. *Exh 1 – Jury Trial Transcript page 174 lines 12-25 through page 175 lines 1-12; Jury Trial Transcript page 181 lines 20-25 through page 182 lines 1-13.* Defendant says these questions were prejudicial because they portrayed him to the jury as someone fighting demons and an alcoholic.

---

[11] Cannon also complains that Harrison failed to object to the prosecutor's comment in closing argument that, "[The victim] told you . . . that there was many times in which she felt him penetrate her vagina with his fingers." Doc. 1 at 26 (quoting trial transcript at 238). The underlying comment was the subject of Ground One of Cannon's habeas petition and was deemed proper. *See* Discussion *supra*, Ground One. Thus, it cannot form the basis for a successful ineffective-assistance claim.

FN1 The letters, the Defendant claims, were not disclosed to the defense as required by the discovery rules. The letters did not exonerate the Defendant and they were equally accessible to the defense.

Defendant also alleges the prosecutor told the jury he penetrated the victim but there was no evidence to prove it. These claims are insufficient. The letters were not admitted into evidence nor were they used to prove anything of substance.

Furthermore, the prosecutor's question about the Defendant's alcoholism was not improper. *See Gosciminski v. State*, 132 So. 3d 678 (Fla. 2013) As for the claim about the prosecutor telling the jury the Defendant penetrated the victim with no corroborating evidence, there was sufficient evidence of digital penetration. *Exh 2 – Jury Trial Transcript page 60 lines 15-21; Ex. 3 Jury Trial Transcript page 130 lines 12-20*. Ground One is denied.

Doc. 10-17, Ex. P at 3. The First DCA summarily affirmed without explanation. Doc. 10-9, Ex.. K.

## B.  *Cannon Is Not Entitled to Habeas Relief*

The First DCA's summary affirmance is an "adjudication on the merits" of Cannon's claim, and is reviewed under § 2254(d)'s deferential standard. *See Richter*, 562 U.S. at 99, 100. Consistent with *Wilson*, this court presumes that the First DCA rejected Cannon's claim for the reasons provided by the state circuit court. *Wilson*, 138 S. Ct. at 1192.

A fairminded jurist could agree with the state court's conclusion that Cannon failed to satisfy the *Strickland* standard. Cannon fails to identify any valid legal basis

for objecting to the prosecutor's conduct, and the state court found as a matter of state law that it was not improper. *See, e.g., Herring v. Sec'y, Dep't of Corr.*, 397 F.3d 1338, 1355 (11th Cir. 2005) ("It is a fundamental principle that state courts are the final arbiters of state law, and federal habeas courts should not second-guess them on such matters."); *Pinkney v. Sec'y*, DOC, 876 F.3d 1290, 1295 (11th Cir. 2017) ("[A]lthough 'the issue of ineffective assistance—even when based on the failure of counsel to raise a state law claim—is one of constitutional dimension,' we 'must defer to the state's construction of its own law' when the validity of the claim that [trial] counsel failed to raise turns on state law." (citation omitted)).

Counsel cannot be ineffective for failing to raise a meritless objection. *See Meders v. Warden, Georgia Diagnostic Prison*, 911 F.3d 1335, 1354 (11th Cir. 2019) ("It is not ineffective assistance of counsel to fail to make an objection that is not due to be sustained."); *Green v. Georgia*, 882 F.3d 978, 987 (11th Cir. 2018) (holding that the petitioner could not possibly have suffered *Strickland* prejudice where the objection that was not made would have been futile); *Bolender v. Singletary*, 16 F.3d 1547, 1473 (11th Cir. 1994) ("[I]t is axiomatic that the failure to raise nonmeritorious issues does not constitute ineffective assistance.").

Additionally, the record shows that defense counsel strategically allowed the prosecutor to make his display, and then used it to Cannon's advantage during

closing argument. The prosecutor got such little traction from his cross-examination of Cannon, that he did not even mention the letters, demons, or alcoholism in his summation. Doc. 10-14, Ex. B at 245-46, 265. His only comment on Cannon's testimony was that Cannon paused at times before answering a question. *Id*. at 245-46. Defense counsel used the prosecutor's theatrics to the defense's advantage:

> Mr. Deneen touched on his cross-examination of Mr. Cannon, and said that Mr. Cannon, you know, really had some difficulty in answering his questions.
>
> You heard. You heard and watched and saw Mr. Cannon. And I ask you if he didn't get up there and clearly, simply and straightforwardly deny these charges, even – even when Mr. Deneen got out his pocketknife, got out his pocketknife. And he opens this little package as he's asking questions to my client.
>
> And he says, now, Mr. Cannon, isn't it true that you have a pretty bad drinking problem and that you were writing letters to the judge about seeing demons or something like that, and all the time he's opening this little package, what did you expect? That he's going to come out of that package with a letter where Mr. Cannon just gets up here and admits that he did wrong because he's an alcoholic and because of these demons. That's what this case is all about.
>
> Where is that letter? Where is there any statement admitting guilt from Mr. Cannon?
>
> Where is any comment from Mr. Cannon to the effect that he's driven by demons? That is not fair.
>
> That is not fair to this process of getting to the truth of this matter. To make these kind of aspersions of Mr. Cannon when he's up on that witness stand, and Mr. Cannon said very simply, I did not do that. He

didn't deny that he consumed alcohol. He said his father would bring beer over to the house at times.

But there is no proof that he's some kind of an alcoholic and sees demons, and that this would be the reasons he would go in and molest this young girl. None in this record.

And the rules say that what the lawyers say is not evidence. So what Mr. Deneen says in that regard was not evidence and it shouldn't be considered by you.

Doc. 10-14, Ex. B at 250-51.

Furthermore, the jury was instructed that (1) "[w]hat the lawyers say is not evidence and you are not to consider it as such;" (2) the attorneys' statements are not to be accepted by you as evidence;" and (3) "the case must be tried by you only on the evidence presented during the trial." Doc. 10-14, Ex. B at 29, 31, 32 (preliminary instructions); *Id*. at 227, 231-32 (final instructions). The jury is presumed to have followed the judge's instructions. *Brown v. Jones*, 255 F.3d 1273, 1280 (11th Cir. 2001) ("We have stated in numerous cases, however, that jurors are presumed to follow the court's instructions." (citing *Ingram v. Zant*, 26 F.3d 1047, 1053 (11th Cir. 1994)).

For all of these reasons, Cannon has not shown that the state court's rejection of his claim was contrary to, or involved an unreasonable application of, the *Strickland* standard. Cannon is not entitled to habeas relief on Ground Six.

Page 47 of 53

**Ground Seven**     **"Petitioner has been denied his rights to effective assistance of counsel and due process of law when trial counsel failed to object to the prosecutor committing a Brady violation during trial." Doc. 1 at 28.**

Cannon alleges that trial counsel was ineffective because he failed to object "to the prosecutor entering letters as evidence that had not been disclosed to Petitioner nor counsel prior to trial." Doc. 1 at 28. Cannon identifies the letters as the package the prosecutor displayed while cross-examining Cannon. *Id*. at 28. Cannon maintains that counsel should have "objected to the letters being entered as evidence," based on *Brady v. Maryland*, 373 U.S. 83 (1963).

The State asserts that Cannon is not entitled to habeas relief because he fails to meet § 2254(d)'s demanding standard. Doc. 10 at 38-39.

### A.    *The State Court's Decision*

Cannon presented this ineffective-assistance claim to the state court as "Ground One" of his Rule 3.850 motion. Doc. 10-16, Ex. M at 6-10. The state circuit court denied relief, as detailed above. Doc. 10-17, Ex. P at 3. The First DCA summarily affirmed without explanation. Doc. 10-9, Ex.. K.

### B.    *Cannon Is Not Entitled to Habeas Relief*

"To establish a *Brady* violation, a defendant must prove three essential elements: (1) that the evidence was favorable to the defendant, either because it is exculpatory or impeaching; (2) that the prosecution suppressed the evidence, either

Page 48 of 53

willfully or inadvertently; and (3) that the suppression of the evidence resulted in prejudice to the defendant." *Rimmer v. Sec'y, Fla. Dep't of Corr.*, 876 F.3d 1039, 1054 (11th Cir. 2017).

The state court reasonably concluded that counsel's failure to object or assert a *Brady* violation was not ineffective assistance. Contrary to Cannon's assertion, the letters were not admitted into evidence. Additionally, Cannon fails to show that the letters were exculpatory to him or impeaching of a prosecution witness, as required under *Brady*. Counsel cannot be ineffective for failing to perform a futile act. *See Meders*, 911 F.3d at 1354; *Green*, 882 F.3d at 987; *Insignares v. Sec'y, Fla. Dep't of Corr.*, 755 F.3d 1273, 1284 (11th Cir. 2014) ("The state judge had a reasonable basis to decide that counsel was not deficient for failing to raise non-meritorious objections."). Cannon is not entitled to habeas relief on Ground Seven.

**Ground Eight**   **"Petitioner has been denied his rights to effective assistance of counsel and due process of law based upon the cumulative effect of counsel's errors." Doc. 1 at 30.**

Cannon alleges that the cumulative effect of counsel's alleged errors detailed in Grounds Three through Seven above, deprived him of his rights to effective assistance of counsel and a fair trial. Doc. 1 at 30-37. The State asserts that Cannon is not entitled to habeas relief because he fails to meet § 2254(d)'s demanding standard. Doc. 10 at 39-41.

## A.    *The State Court's Decision*

Cannon presented this cumulative-error claim to the state court as "Ground Seven" of his Rule 3.850 motion. Doc. 10-16, Ex. M at 30-31. The state circuit court denied relief as follows: "Defendant's postconviction motion does not demonstrate deficient performance or prejudice. Ground Seven is denied." Doc. 10-17, Ex. P at 5. The First DCA summarily affirmed without explanation. Doc. 10-9, Ex.. K.

## B.    *Cannon Is Not Entitled to Habeas Relief*

The Eleventh Circuit has questioned whether a claim of cumulative error ever can provide a basis for federal habeas relief. *See Morris v. Sec'y, Dep't of Corr.*, 677 F.3d 1117, 1132 & n.3 (11th Cir. 2012) ("We need not determine today whether, under the current state of Supreme Court precedent, cumulative error claims reviewed through the lens of AEDPA can ever succeed in showing that the state court's decision on the merits was contrary to or an unreasonable application of clearly established law."). Although the Supreme Court has not addressed the applicability of the cumulative-error doctrine in the context of ineffective-assistance claims, the Court has held that "there is generally no basis for finding a Sixth Amendment violation unless the accused can show how specific errors of counsel undermined the reliability of the finding of guilt." *United States v. Cronic*, 466 U.S. 648, 659 n.26 (1984) (citations omitted).

Cannon has not shown that the alleged errors of trial counsel discussed above undermine the reliability of the jury's finding of guilt. In light of *Cronic* and the absence of Supreme Court precedent applying the cumulative-error doctrine to claims of ineffective assistance of counsel, the state court's rejection of Cannon's claim was neither contrary to, nor an unreasonable application of, clearly established Federal law. Cannon is not entitled to habeas relief on Ground Eight.

## IV. CERTIFICATE OF APPEALABILITY IS NOT WARRANTED

Rule 11(a) of the Rules Governing Section 2254 Cases in the United States District Courts provides: "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." If a certificate is issued, "the court must state the specific issue or issues that satisfy the showing required by 28 U.S.C. § 2253(c)(2)." 28 U.S.C. § 2254 Rule 11(a). A timely notice of appeal must still be filed, even if the court issues a certificate of appealability. *See* 28 U.S.C. § 2254 Rule 11(b).

"[Section] 2253(c) permits the issuance of a COA only where a petitioner has made a 'substantial showing of the denial of a constitutional right.'" *Miller-El*, 537 U.S. at 336 (quoting 28 U.S.C. § 2253(c)). "At the COA stage, the only question is whether the applicant has shown that 'jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude

the issues presented are adequate to deserve encouragement to proceed further.'"

*Buck v. Davis*, 580 U.S. ___, 137 S. Ct. 759, 774 (2017) (quoting *Miller-El*, 537 U.S. at 327). "When the district court denies a habeas petition on procedural grounds without reaching the prisoner's underlying constitutional claim, a COA should issue when the prisoner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right *and* that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (emphasis added). Here, Petitioner has not made the requisite demonstration. Accordingly, the court should deny a certificate of appealability in its final order.

The second sentence of Rule 11(a) provides: "Before entering the final order, the court may direct the parties to submit arguments on whether a certificate should issue." 28 U.S.C. § 2254 Rule 11(a). If there is an objection to this recommendation by either party, that party may bring such argument to the attention of the district judge in the objections permitted to this report and recommendation.

## V. CONCLUSION

For the reasons set forth above, the undersigned respectfully **RECOMMENDS** that:

1.  The petition for writ of habeas corpus, Doc. 1, challenging the judgment of conviction and sentence in *State of Florida v. Charles Anthony Cannon*, Wakulla County Circuit Court Case No. 2014-CF-92, be **DENIED**.

2.  The District Court **DENY** a certificate of appealability.

3.  The clerk of court close this case file.

At Panama City, Florida, this <u>19th</u> day of September, 2022.

<u>/s/ *Michael J. Frank*</u>
**Michael J. Frank**
**United States Magistrate Judge**

## <u>NOTICE TO THE PARTIES</u>

**The District Court referred this case to the undersigned to address preliminary matters and to make recommendations regarding dispositive matters. *See* N.D. Fla. Loc. R. 72.2(B); *see also* 28 U.S.C. § 636(b)(1)(B), (C); Fed. R. Civ. P. 72(b).Objections to these proposed findings and recommendations must be filed within fourteen (14) days of the date of the report and recommendation. <u>Any different deadline that may appear on the electronic docket is for the court's internal use only and does not control.</u> An objecting party must serve a copy of the objections on all other parties. A party who fails to object to the magistrate judge's findings or recommendations contained in a report and recommendation waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions. *See* 11th Cir. R. 3-1; 28 U.S.C. § 636.**